# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| GINO SILVA LEON, MARIELLA LEON, NIVALDO PRIETO, and TANIA CHINEA PRIETO, individually and behalf of all others similarly situated,<br><br>　　　Plaintiffs,<br><br>　　v.<br><br>YGRENE ENERGY FUND, INC., YGRENE ENERGY FUND FLORIDA LLC, YGRENE ASSOCIATION FUNDING, LLC, and YGRENE HOLDINGS FLORIDA, LLC,<br><br>　　　Defendants. | Civil Action No.<br><br>CLASS ACTION COMPLAINT AND  JURY DEMAND |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Gino Silva Leon, Mariella Leon, Nivaldo Prieto, and Tania Chinea Prieto ("Plaintiffs"), individually and on behalf of the other members of the Nationwide Class or Statewide Class defined below (the "Class") bring this Class Action Complaint (the "Complaint") against Defendants Ygrene Energy Fund, Inc., Ygrene Energy Fund Florida LLC, Ygrene Association Funding LLC,  and Ygrene Holdings Florida LLC, (collectively "Ygrene" or Defendants") arising from Defendants' practice of systemically, repeatedly, and continually breaching material terms in the Financing Agreement by disbursing funds to Defendants' authorized

1

contractors before home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements.

As a result of Defendants' wrongful conduct, Plaintiffs and Class Members have uniformly suffered quantifiable financial harm as a result of 1) being deprived the full use of their home improvements while paying for these home improvements as tax assessments on their property tax bills; 2) having to pay third-party contractors to complete the work that was never finished by Defendants' authorized contractors; and/or 3) having to pay fees for code violations and other costs arising from Defendants' breaches of contract.

## **NATURE OF THE ACTION**

**Ygrene and its authorized contractors have a storied history of egregious wrongful conduct resulting in harmed consumers.**

1.      October 28, 2022, the Federal Trade Commission ("FTC") and State of California filed suit against Ygrene Energy Fund Inc. ("Ygrene") alleging that Ygrene deceived consumers about the potential financial impact of its financing; Ygrene recorded liens on consumers' homes without their consent; Ygrene's authorized contractors falsely told consumers that the financing would not interfere with the sale or refinancing of their homes; and in many instances, Ygrene's

authorized contractors relied on high-pressure sales tactics or outright forgery to sign consumers up.[1]

2.     Samuel Levine, Director of the FTC's Bureau of Consumer Protection, stated in a press release:

> Ygrene and its sales force deceived consumers about home improvement financing and then stuck consumers with liens that made it difficult to sell their homes…Our proposed order would require Ygrene to clean up its business practices, monitor its sales force, and help defrauded consumers remove their liens.[2]

3.     Rob Bonta, California Attorney General, stated,

> Ygrene Energy Fund took advantage of hardworking California families, jeopardizing their most valuable asset in the process… PACE financing was meant to help families make important home improvements, but the dishonesty of companies like Ygrene has left some homeowners at risk of losing their homes.[3]

4.     Notably, the Complaint filed by the FTC and State of California alleges:

> In numerous instances, the contractor causes Ygrene to send its form finance agreement to an email address controlled by the contractor rather than the consumer.  The contractor, rather than the consumer, then "e-signs" the contract in the space for the consumer's signature, without the consumer's authorization, tantamount to forging the consumer's signature.[4]

---

[1] *See generally Federal Trade Commission and The People of the State of California v. Ygrene Energy Fund Inc*., United States District Court for the Central District of California, case no. 2:22-cv-07864, [Doc. no. 1].

[2] *FTC, California Act to Stop Ygrene Energy Fund from Deceiving Consumers About PACE Financing, Placing Liens on Homes Without Consumers' Consent*, FTC Press Releases webpage, https://www.ftc.gov/news-events/news/press-releases/2022/10/ftc-california-act-stop-ygrene-energy-fund-deceiving-consumers-about-pace-financing-placing-liens (Last visited September 14, 2023).

[3] *Id.*

[4] *Federal Trade Commission and The People of the State of California v. Ygrene Energy Fund Inc*., United States District Court for the Central District of California, case no. 2:22-cv-07864, [Doc. no. 1], at ¶ 6.

5.      The Complaint further alleges that the primary way that Ygrene markets and sells its financing to consumers "is through its network of thousands of home-improvement contractors" that Ygrene relies on to "explain and sign up consumers for its novel and complex PACE[5] financing."[6]

6.      Additionally, the Complaint alleges that "Ygrene fails to properly train, and meaningfully oversee" its "authorized contractors".[7]

7.      Last, Ygrene is well-aware of the systemic, repeated, and continual wrongful conduct by its authorized contractors:

> Since launching its residential PACE program, Ygrene has received hundreds of complaints about dishonest conduct and misleading representations by its authorized contractors. Notwithstanding these complaints, Ygrene has not changed its practice of relying on contractors to explain and sell its PACE financing to consumers, nor has it implemented adequate fraud-prevention measures. In fact, Ygrene has continued to rely on many contractors that have been the subject of numerous complaints.
>
> Ygrene has been made aware by various means that the electronic signatures that it receives on its finance agreement cannot be trusted to belong to the consumer whose name is on the agreement.  For example, Ygrene has received numerous consumer complaints stating that the consumer did not e-sign Ygrene's finance agreement, and/or that the email address Ygrene has on file for the consumer—the address to which Ygrene sent its finance agreement— does not belong to the consumer. In following up on consumer complaints, and in speaking with contractors, Ygrene has also been made aware that contractors provide their own email addresses, instead of the email addresses of consumers, on finance applications.[8]

---

[5] PACE is an acronym for Property Assessed Clean Energy, a form of financing available for certain energy-related home improvement projects.  *Id.* at ¶ 3.
[6] *Id.* at ¶¶ 31-32.
[7] *Id.* at ¶ 33.
[8] *Id.* at ¶¶ 34 and 102.

**In the present action, Ygrene's authorized contractors forged Plaintiffs' e-signatures to get paid before home improvements were completed and Ygrene breached material terms in the Financing Agreement by disbursing funds to its authorized contractors before home improvements were completed.**

8.      In the aforementioned action, the FTC and State of California allege violations of the FTC Act, Regulation N, California's False Advertising Law, and California's Unfair Competition Law arising from Ygrene's alleged misrepresentations about the effect of its unique financing on consumers' ability to sell or refinance their homes.

9.      In the present action, Plaintiffs allege that Ygrene materially breached the Agreement to Pay Assessments and Finance Qualifying Improvements ("the Financing Agreement") by disbursing funds to Ygrene's authorized contractors before the home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements.

10.     Ygrene's Financing Agreement provides "[t]he district will make one disbursement as directed by the Property Owner when the following conditions have been met", including "(1) all required affidavits from all contractors and the Property Owner certifying that the Final Improvements have been completed in accordance with all applicable building codes, regulations, and other governmental

requirements, and (ii) final releases or waivers of all applicable contractors', mechanic's and materialmen's liens":[9]

> b) **Disbursement of Funds.** The District will make one disbursement as directed by the Property Owner when the following conditions have been met, except in the case of an approved phase or course of construction payment schedule authorized by the District. The District's obligation to disburse funds to pay the costs of the Final Improvements shall be conditioned upon the Property Owner providing, to the satisfaction of the District, (i) all required affidavits from all contractors and the Property Owner certifying that the Final Improvements have been completed in accordance with all applicable building codes, regulations, and other governmental requirements, and (ii) final releases or waivers of all applicable contractors', mechanic's and materialmen's liens. Disbursed funds must be used to pay for the installation of improvements or used purely as a reimbursement of expenses incurred for the installation of improvements. Acceptance of financing while refusing to pay for installation of improvements may constitute fraud against the Program.

11.     Notably, the Financing Agreement requires that the home improvements "**have been completed in accordance with all applicable building codes, regulations, and other governmental requirements**."[10]

12.     Ygrene's Certificate of Completion provides that the property owners must certify that Ygrene's contractors have "completed all agreed upon acquisition, construction, and/or product installations contracted to be performed to date on the property to our satisfaction and provided a conditional lien release":[11]

**CERTIFICATE OF COMPLETION**

AFTER ALL WORK AND/OR PROJECT PHASES HAVE BEEN COMPLETED AND/OR THE PROPERTY OWNER(S) HAS(HAVE) AUTHORIZED A DISBURSEMENT FOR MATERIALS, THE PROPERTY OWNERS OR ONE PROPERTY OWNER ON THEIR BEHALF, IN ACCORDANCE WITH THE FINANCE AGREEMENT (THE "AUTHORIZATION") MUST, ALONG WITH THE CONTRACTOR, EXECUTE THIS CERTIFICATE AND FORWARD IT, COMPLETE WITH ALL REQUIRED ATTACHMENTS, TO YGRENE.

\*        \*        \*

The contractor has delivered all agreed-upon materials to my property and/or has completed all agreed-upon acquisition, construction, and/or product installations contracted to be performed to date on the property to our satisfaction and has provided a conditional lien release.

13.     Like in the action brought by the FTC and State of California, Plaintiffs in the present action allege that Ygrene's authorized contractors unlawfully forged

---

[9] *Financing Agreement,* p. 3.
[10] *Id.* (emphasis added)
[11] *Ygrene Certificate of Completion*

Plaintiffs' and the Class's e-signatures to the Certificate of Completion—with Ygrene's knowledge—to allow Ygrene to disburse funds to the contractors before the home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements.

14.     Ygrene materially breached the Financing Agreement by disbursing funds to authorized contractors before the home improvements were completed, upon their contractors forging Plaintiffs' e-signatures to the Certificate of Completion.

15.     Ygrene knowingly accepted these forged e-signatures as part of a common scheme with Ygrene's authorized contractors to increase profits by increasing the number of consumers with Ygrene financing.

16.      Notably, Plaintiffs and putative Class Members never e-signed the Certificates of Completion, nor certified, nor represented in any way to Ygrene that their home improvements were completed because Ygrene's authorized contractors had not completed the home improvements in accordance with all applicable building codes, regulations, and other governmental requirements, and in some cases, had not even begun work on the home improvements.

**The Prieto Family**

17.     On June 30, 2021, Plaintiffs Nivaldo Prieto and Tania Chinea Prieto ("the Prieto family") contracted with a Ygrene authorized contractor for the

installation of three (3) high-impact doors, ten (10) high-impact windows, and a central heating ventilation and air conditioning ("HVAC") unit on the Prieto family's single-family home in Homestead, Miami-Dade County, Florida.

18.     The total cost of the doors, windows, and HVAC unit was $50,408.92.

19.     The Ygrene authorized contractor provided the Prieto family with Ygrene's Agreement to Pay Assessments and Finance Qualifying Improvements ("Financing Agreement") to finance the home improvements.

20.     As set forth above, under the subheading "Disbursement of Funds", the Financing Agreement provided that Ygrene will disburse funds to the contractor when the home improvements are completed in accordance with all applicable building codes, regulations, and other governmental requirements.[12]

21.     Following the installation of the doors, windows and HVAC unit, a Miami-Dade County inspector issued a violation because the contractor failed to submit plans for the home improvements and the windows were installed in violation of code.

22.     In or about that time, Ygrene released the funds to its authorized contractor.

---

[12] *Id.*

23.     When Plaintiff Tania Chinea Prieto received a copy of the Certificate of Completion, she noticed that the e-signature had the initials "TCP"; however, she has always initialed documents "TCH", with the "CH" signifying "Chinea".

24.     Plaintiff Tania Chinea Prieto recognized that the e-signature initials had been forged.

25.     To date, the Ygrene authorized contractor has failed to mitigate the code violations or submit plans as required by Miami-Dade County, and remains unresponsive.

26.     The fee for the violation was $510, which the Prieto family paid out-of-pocket.

27.     If Ygrene had complied with the terms of the Finance Agreement and disbursed funds only upon the contractor's completion of the home improvements, then the contractor would have been obligated to complete the home improvements and mitigate any failed inspections.

28.     As a result of Defendants' wrongful conduct, the Prieto family suffered quantifiable financial harm as a result of 1) being deprived the full use of their home improvements; and 2) having to pay a $510 fee for a code violation.

29.     In addition, the Prieto family most likely will have to hire a third-party contractor to re-install the windows pursuant to code.

**The Leon Family**

30.     On September 30, 2021, Plaintiffs Gino Silva Leon and Mariella Leon ("the Leon family") contracted with a Ygrene authorized contractor for the installation of a 9.13 kW solar energy system ("the PV system") consisting of twenty-two (22) solar panels on the Leon family's single-family home in Miramar, Broward County, Florida.[13]

31.     The Leon family also contracted in the Addendum to Agreement for the installation of an air conditioning ("AC") unit, solar attic fan, LED lights, thermostat, insulation, and water heater.[14]

32.     The total cost of the PV system, with additional products included on the Addendum to the Agreement, was $53,300.[15]

33.     The Ygrene authorized contractor provided a Home Improvement Agreement which required the Leon family to agree that Ygrene would finance the purchase and installation of the PV system and other home improvements:[16]

Owner agrees to pay SolArmy LLC through _YGrene_____ financing as follows:

$53,300.00_____  Total improvements investment
9.13_____  Total system size

---

[13] *SolArmy, LLC Home Improvement Agreement*, p. 12.
[14] *SolArmy, LLC Addendum to Agreement*
[15] *Id*. at pp. 1, 12, and 18.
[16] *Id.* at 1.

34.     Consequently, the Leon family contracted with Ygrene to finance the PV system and executed the Agreement to Pay Assessments and Finance Qualifying Improvements ("the Financing Agreement") on September 29, 2021.

35.     As set forth above, under the subheading "Disbursement of Funds", the Financing Agreement provided that Ygrene will disburse funds to the contractor when the home improvements are completed and in accordance with all applicable building codes, regulations, and other governmental requirements.[17]

36.     On or about June 2022, the contractor began installing the PV system on the Leon family's home.

37.     Approximately one month after the contractor represented that the PV system had been completed, the PV system failed inspection.

38.     After approximately seven (7) inspections, the PV system has failed to pass inspection, remains inoperable, is not producing energy, and has not been connected to the power grid.

39.     The Leon family also discovered that the AC unit required substantial work to be made operable, including replacement of the compressor, which cost approximately $300.

40.     In addition, the water heater failed inspection, and required a new electrical connection, which cost approximately $500.

---

[17] *Financing Agreement,* p. 3.

41.     The Ygrene authorized contractor was unresponsive to the Leon family, who had to hire third-party contractors to complete the home improvements.

42.     On or about August 2023, the Leon family discovered that Ygrene had disbursed the funds in full to the contractor over a year earlier—in May 2022.

43.     Shortly thereafter, the contractor became unresponsive and failed to complete the home improvements, with the Leon family's PV system, AC unit, and water heater requiring additional work which was performed by third-party contractors.

44.     If Ygrene had complied with the terms of the Finance Agreement and disbursed funds only upon the contractor's completion of the home improvements, then the contractor would have been obligated to complete the home improvements and mitigate any failed inspections.

45.     As a result of Ygrene's wrongful conduct, the Leon family suffered quantifiable financial harm as a result of 1) being deprived the full use of their PV system to produce energy while having to pay the additional tax assessment on their property tax bill for their PV system **and** their monthly electric utility bills that the PV system was purchased to offset; and 2) having to pay third-party contractors to complete work on the AC unit and water heater that was never completed in accordance with all applicable building codes, regulations, and other governmental requirements by Ygrene's authorized contractor, who was paid in full by Ygrene.

## PARTIES

**Plaintiffs**

46.     Plaintiff Gino Silva Leon is a citizen of Florida and resident of Miramar, Broward County, Florida.

47.     Plaintiff Gino Silva Leon is the son of plaintiff Mariella Leon.

48.     Plaintiff Mariella Leon is a citizen of Florida and resident of Miramar, Broward County, Florida.

49.     Plaintiff Mariella Leon is the mother of plaintiff Gino Silva Leon.

50.     Plaintiff Nivaldo Prieto is a citizen of Florida and resident of Homestead, Miami-Dade County, Florida.

51.     Plaintiff Nivaldo Prieto is the spouse of plaintiff Tania Chinea Prieto.

52.     Plaintiff Tania Chinea Prieto is a citizen of Florida and resident of Homestead, Miami-Dade County, Florida.

53.     Plaintiff Tania Chinea Prieto is the spouse of plaintiff Nivaldo Prieto.

54.     Plaintiffs Gino Silva Leon, Mariella Leon, Nivaldo Prieto, and Tania Chinea Prieto will be collectively referred to as "Plaintiffs".

**Defendants**

55.     Defendant Ygrene Energy Fund Inc. is a Delaware corporation with a principal place of business located at 6303 Blue Lagoon Dr., Suite 400, Miami, Florida 33126.

56.     Defendant Ygrene Energy Fund FL LLC is a Florida corporation with a principal place of business located at 6303 Blue Lagoon Dr., Suite 400, Miami, Florida 33126.

57.     Defendant Ygrene Association Funding LLC is a Delaware corporation with a principal place of business located at 6303 Blue Lagoon Dr., Suite 400, Miami, Florida 33126.

58.     Defendant Ygrene Holdings Florida LLC is a Delaware corporation with a principal place of business located at 6303 Blue Lagoon Dr., Suite 400, Miami, FL 33126.

59.     Defendants Ygrene Energy Fund Inc., Ygrene Energy Fund Florida LLC, Ygrene Association Funding LLC, and Ygrene Holdings Florida LLC, are collectively referred to herein as "Ygrene" or "Defendants".

## JURISDICTION AND VENUE

60.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because at least one Class Member is of diverse citizenship from Defendants, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5,000,000 exclusive of costs and interest.

61.     This Court has personal jurisdiction over Defendants because Defendants are registered to conduct business in the State and all Defendants have principal places of business located in this District.  Defendants' contacts with the

14

State of Florida are systematic, continuous, and sufficient to subject them to personal jurisdiction in this Court.  Specifically, Defendants purposefully availed themselves of the privilege of conducting business in the forum state by financing home improvements within the forum state and having principle places of business in the forum state.

62.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to Plaintiffs' claims occurred within this District.  Defendants have their principal places of business located in this District and otherwise conducted extensive business within this District.

63.     Plaintiffs Gino Silva Leon, Mariella Leon, Nivaldo Prieto, and Tania Chinea Prieto as well as many other Class Members, financed their home improvements from Defendants' office located in this District.

## FACTS COMMON TO ALL COUNTS

**Plaintiffs and the Class contracted with Defendants to finance their home improvements and Defendants breached material terms in contractual agreements with Plaintiffs and the Class by disbursing funds to contractors before the home improvements were complete.**

64.     Plaintiffs and the Class uniformly contracted with Defendants to finance the purchase and installation of PACE-qualifying home improvements, including solar energy systems ("photovoltaic systems" "PV systems" or "solar panels"), storm windows, doors, water heaters, and AC/HVAC units.

15

65.     Defendants represented to Plaintiffs and the Class that Defendants would disburse funds to their authorized contractors only when the home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements.[18]

66.     Defendants breached material terms in contractual agreement with Plaintiffs and the Class by making disbursements to their authorized contractors **before** the home improvements had been completed in accordance with building codes, regulations, and other governmental requirements.

67.     After Defendants had disbursed funds in full to their authorized contractors, the contractors moved on to other projects without any incentive or further obligation from Defendants to complete home improvements for Plaintiffs and the Class or to mitigate code violations issued to Plaintiffs and the Class.

68.     As a result, Plaintiffs and the Class were 1) deprived the full use of their home improvements while paying for these home improvements as tax assessments on their property tax bills; 2) had to pay third-party contractors to complete the work that was never finished by Defendants' authorized contractors; and/or 3) had to pay fees for code violations and/or other costs arising from Defendants' breaches of contract.

---

[18] *Id.*

69.     Plaintiffs and the Class relied on Defendants' representations that Defendants would disburse the funds to Defendants' authorized contractors pursuant to the terms in the Financing Agreement, with funds being disbursed only after the home improvements had been completed in accordance with all applicable building codes, regulations, and other governmental requirements.

**Plaintiffs and the Class have suffered quantifiable financial harm as a result of Defendants' wrongful conduct.**

70.     Plaintiffs and the Class have suffered quantifiable financial harm because Defendants materially breached the Financing Agreement by disbursing funds to their authorized contractors before the home improvements were complete. As a result:

a.     Plaintiffs and the Class were deprived the full use of their home improvements while paying for these home improvements as tax assessments on their property tax bills;

b.     Plaintiffs and the Class had to pay third-party contractors to complete the work that was never finished by Defendants' authorized contractors; and/or

c.     Plaintiffs and the Class had to pay fees for code violations and/or other costs arising from Defendants' breaches of contract.

**Defendants' wrongful conduct has been uniformly directed toward a Nationwide Class or State Class.**

71.     Defendants' wrongful conduct is systemic, repetitive, and continuous, and Defendants have uniformly directed their wrongful conduct toward a Nationwide Class or State Class to maximize the number of home improvement projects financed with no regard to their contractual obligations or consumers receiving the benefit of the bargain.

72.     On the Better Business Bureau website, numerous putative Class Members have posted reviews that evidence Defendants' wrongful conduct, complaining of the same factual allegations that are the basis for the causes of action in this Complaint.[19]  Notably, Defendants have a one (1) star customer review rating:

Customer Review Rating

⭐☆☆☆☆ 1.38/5

73.     Putative Class Member Eliza L posted that Defendants "wanted to release the money as soon as possible" to the construction company without approval by the homeowners:

---

[19] *Better Business Bureau website, Ygrene Energy Fund, Inc. customer reviews,* https://www.bbb.org/us/ca/petaluma/profile/energy-service-company/ygrene-energy-fund-inc-1116-874633/customer-reviews (Last visited September 13, 2023).



**Eliza L**
⭐☆☆☆☆                                                                                      09/22/2020

This Ygrene company doesnt even help the homeowners, they are aware that the construction company
were not good, they just permitted to approve the PACE funding program. All they wanted to release the
money as soon as possible with the construction company despite of homeowners complained to them
that the workers were very unprofessional and lack of experience. And when we asked for help to look
for the construction company which doesnt exist anymore they dont do anything to help the
homeowners. Imagine we need to pay the PACE loan projects for 20 Yrs then when it has breakdown
theres no warranty because the construction company doesnt exist anymore. These people are spam,
misleading to homeowners especially to old people.We are seeking legal aid to check Ygrene Energy
Fund due to their desire to quick doing loan process without thinking of the consequences of the
protection to the consumers.

74.     Putative Class Member Michael G posted that Defendants paid the
contractor "before the project was done" and the contractor "has been slow to rectify
the issues.  Its been 16 months since we signed the contract and Ygrene just allows
it to happen.  Don't trust Ygrene":



**Michael G**
⭐☆☆☆☆                                                                                      09/06/2022

Ygrene has been doing business with ******* Windows and Doors even though there have
been numerous complaints filed against ******* Windows and Doors. ******* Windows and
Doors has messed up in every stage of the installation of our $25,000 worth hurricane
windows and doors. Ygrene paid ******* Windows and Doors before the project was done and
******* Windows and Doors has been slow to rectify the issues. Its been 16 months since we
signed the contract and Ygrene just allows it to happen. Dont trust Ygrene.

75.     Putative Class Member Nicola M. posted that Defendants "left an open
permit on my mother's home for almost 3 years" and the "job was never completed"
with a "failed inspection".  Notably, the 85 year old mother was paying for the home
improvements:



Nicola M

⭐☆☆☆☆                                                           11/10/2021

?? ?? ?? ?? STOP! WAIT! DO NOT USE YGREENE! YGREENE SUBMITTED A CHECK TO A
COMPANY WHO USED DISHONEST SALES TACTICS TO MY 85YRS OLD MOTHER.1) LEFT AN
OPEN PERMIT ON MY MOTHER'S HOME FOR ALMOST 3YRS 2) MY MOTHER IS STUCK WITH
HUNDREDS OF DOLLARS OUTSTANDING ****! (PERMIT NEVER CLOSED)3) JOB WAS NEVER
COMPLETED!4) INSPECTION FAILED!5) EVERY ONE GOT PAID OFF THE BACK OF MY
ELDERLY MOTHER!SHAME ON YOU YGREENE!!

76.     A putative Class Member posted that the contractor told Ygrene that

the "job was finished, they collected the money from Ygrene and now they don't

want to do the rest of the job."  The Class Member further complained, "Ygrene

should have NOT pay them until job was finished, that is why I have a problem now

that they don't want to do anything else, but I have to pay YGRENE for a job that

was not done."  Notably, this putative Class Member references the Disbursement

Clause in the Financing Agreement that requires Ygrene's authorized contractors to

complete the home improvement before funds are released:



**Initial Complaint**                    **Complaint Type:** Problems with Product/Service
10/07/2021                               **Status:** Answered ❓

My did a contract with Build4less to do a project in my house, they were going to repair the
roof, the inside of the house, some cosmetic work and a brand new lamp to the part that was
damaged. They finish the roof and told YGRENE job was finished, they collected the money
from Ygrene and now they don't want to do the rest of the job.The contract have a clause
that shows: "IT IS AGAINST THE *** FOR A CONTRACTOR TO COLLECT PAYMENT FOR
WORK NOT YET COMPLETED OF FOR MATERIALS NOT YET DELIVERED, HOWEVER, AN
CONTRACTOR MAY REQUIRE A DOWN PAYMENT", according to this clause what they did is
against the law because the contract shows "**** sqft roof repair, sheet rock, cosmetic work
and brand new lamp" they only did the roof repair, nothing else, so technically payment was
collected without finishing the job. Ygrene should have NOT pay them until job was finished,
that is why I have a problem now that they don't want to do anything else, but I have to pay
YGRENE for a job that was not done.

20

77.     In addition to posts on the Better Business Bureau website, putative Class Members have posted on Yelp.com, complaining of the same factual allegations that are the basis for the causes of action in this Complaint.[20]  On the Yelp website, Defendants have a two (2) star overall rating with the majority of the reviews being one (1) star reviews:



78.     Putative Class Member Tammy D. from Miramar, Florida posted "I had windows and doors done with their financing they proceeded to pay the contractor USA Green even after I called, wrote and told them they scammed me. My permit has expired and still open":

---

[20] Yelp.com, Ygrene reviews https://www.yelp.com/biz/ygrene-energy-fund-miami?start=10&rr=1 (Last visited September 13, 2023).



**Tammy D.**
Miramar, FL
🖼 0   ⊡ 1

 3/7/2021 · 🔄 Updated review

I need a copy of my invoice or contract to show what the contractor charged me.  Can you help? I had to hire a lawyer who has also requested it to Ygrene.  Noting yet!  Scam



| 💡 | 🤚 | 🤍 | 🐶 |
|---|---|---|---|
| Helpful **4** | Thanks **0** | Love this **0** | Oh no **0** |

 3/2/2021 · **Previous review**

I had a windows and doors done with their financing they proceeded to pay the contractor USA Green even after I called, wrote and told them they scammed me.  My permit has expired and still open.  I water damage in my house due to bad installations.  I hired a lawyer and they have yet to provide us with a copy of the invoice which is crucial as the amount on the contract provided to my lawyer is way different.

79.     Putative Class Member Ahlai A. posted, "I contracted with Florida Solar and Air, the first installation was done incorrectly and had to be removed and re-installed…leaving the job incomplete…[a]fter several emails to Ygrene, nothing. I've been left to fight this issue alone":



**Ahlai A.**
Dallas, TX
🖼 15   ⊡ 9   🖼 20

 1/30/2019

If you have an issue with a contractor, you're on your own. I contracted with Florida Solar and Air, the first installation was done incorrectly and had to be removed and re-installed. I contacted Ygrene several times and they advised me that the job will be done to my satisfaction but the contractor breached the contract by not abiding by terms set, leaving the job incomplete. After several emails to Ygrene, nothing. I've been left to fight this issue alone.

80.     On Glassdoor.com, a current Ygrene employee confirmed that Ygrene

"paid some contractors before the projects was even finished":[21]



1.0 ★☆☆☆☆                                                          Oct 11, 2022  •••

**Good Program, terrible company management that offered it**

👤 Operations
   Current Employee

○ Recommend   ○ CEO Approval   ○ Business Outlook

**Pros**
They had a great work from home environment and competitive pay

**Cons**
They seem to only care about making themselves money and not about their customers and employees. They gave the contractors the ability to know how much a property owner was approved for, which could lead to them taking disadvantage of them. They paid some contractors before the projects was even finished. These were acts that we told property we DID NOT DO on a recorded line. They willingly left out important information that would change a property owners decision about the financing, which lead to a lot of future complaints and legal issues. They claimed to be transparent, but with their recent layoffs in 2022, they did two mass layoffs, all while PROMISING their employees after the act was done each time that everything will be fine and it needed to be some to ensure strong growth, then payed off everyone less then a week after, with no pay or care. The president had a less than r minute meeting to fire everyone and just left and we were all told to log out.

**Advice to Management**
Be more transparent to the people who's lives you have an impact on, your customers and employees. Not everyone makes six figures and get easily get their lives together after you ruin it!!!!!!!

81.   In summary, numerous putative Class Members and a former Ygrene employee have posted online complaints making the same factual allegations that are the basis for the causes of action in this Complaint.

82.   As set forth above, Defendants' wrongful conduct is systemic, repetitive, and continuous, and Defendants have uniformly directed their wrongful conduct toward a Nationwide Class or State Class to maximize the number of home improvement projects financed with no regard to their contractual obligations or

---

[21] *Ygrene Energy Fund Reviews*, https://www.glassdoor.com/Reviews/Ygrene-Energy-Fund-Reviews-E1019545.htm?filter.iso3Language=eng&filter.searchKeyword=contractors (Last visited September 13, 2023).

consumers receiving the benefit of the bargain.

## TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

**Discovery Rule Tolling**

83.     Plaintiffs and Class Members could not have discovered through reasonable diligence that Defendants had disbursed funds to their authorized contractors in violation of the terms of the Financing Agreement and the contractors would be unwilling to complete home improvements or mitigate code violations for Plaintiffs and the Class within the time period of any applicable statutes of limitation.

84.     Therefore, Plaintiffs' claims and the claims of all Class Members did not accrue until they discovered Defendants' wrongful conduct.

**Fraudulent Concealment Tolling**

85.     Throughout the time period relevant to this action, Defendants concealed and failed to disclose to Plaintiffs and Class Members vital information about Defendants violating the terms of the Financing Agreement by disbursing funds to their authorized contractors before the home improvements were completed within the time period of any applicable statutes of limitation.

86.     Defendants kept Plaintiffs and Class Members ignorant of vital information essential to the pursuit of their claims, and as a result, neither Plaintiffs nor the other Class Members could have discovered Defendants' representations

and/or omissions were false and deceptive, even upon reasonable exercise of diligence.

87.    Prior to the date of this Complaint, Defendants knew their representations were false and deceptive, but continued to make misrepresentations about material facts, or concealed material facts, from Plaintiffs and the Class.

88.    In doing so, Defendants concealed from, or failed to notify, Plaintiffs and Class Members about the false and deceptive nature of Defendants' misrepresentations and/or omissions to induce Plaintiffs and Class Members to contract with Defendants for the financing of home improvements.

89.    Plaintiffs and Class Members justifiably relied on Defendants representations that Defendants would comply with the terms of the Financing Agreement and pay their authorized contractors only upon completion of the home improvements in accordance with all applicable building codes, regulations, and other governmental requirements.

90.    Defendants' concealment was not discoverable through reasonable efforts by Plaintiffs and Class Members.

91.    Thus, the running of all applicable statutes of limitation has been tolled and suspended with respect to any claims that the Plaintiffs and the other Class Members have sustained as a result of Defendants' misrepresentations and omissions by virtue of the fraudulent concealment doctrine.

**Estoppel from asserting a statute of limitations defense**

92.     Defendants were under a continuous duty to disclose to Plaintiffs and Class Members that Defendants had disbursed funds to their authorized contractors before the home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements in violation of the terms of the Financing Agreement.

93.     Defendants actively concealed these material facts from Plaintiffs and Class Members.

94.     Plaintiffs and Class Members reasonably relied upon Defendants knowing and actively concealing these material facts.

95.     Defendants are accordingly estopped from relying on any statute of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

96.      Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action on behalf of themselves and on behalf of a Nationwide Class, defined as:

**Nationwide Class**

> All persons and entities within the United States (including its Territories and the District of Columbia) who contracted with Defendants to finance home improvements and Defendants disbursed funds to their authorized contractors before the home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements.

26

97.     In the alternative to the Nationwide Class, and pursuant to Fed. R. Civ. P. 23(5), Plaintiffs seek to represent the following State Class as well as any subclasses or issue classes as Plaintiffs may propose and/or the Court may designate at the time of class certification:

### Florida Class

> All persons and entities within the State of Florida who contracted with Defendants to finance home improvements and Defendants disbursed funds to their authorized contractors before the home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements.

98.     Excluded from all classes are Defendants, as well as Defendants' employees, affiliates, officers, and directors, and the judge and court staff to whom this case is assigned.

99.     Plaintiffs reserve the right to modify and/or add to the Nationwide and/or State Class prior to class certification.

### Fed. R. Civ. P. 23(a) Prerequisites

100.    **Numerosity.**   Both the Nationwide Class and State Class are so numerous that joinder of all members is impracticable.  Although the precise number of Class Members is unknown and is within the exclusive control of Defendants, upon information and belief, Defendants' wrongful conduct as set forth above was directed at thousands of Class Members in the United States, including hundreds in the State of Florida.

101.   **Commonality.**  The claims of Plaintiffs and the Nationwide Class and State Class involve common questions of fact and law that will predominate over any individual issues.  These common questions include, but are not limited to:

a.      Whether Defendants knew or should have known that their representations to Plaintiffs and the Class that Defendants would comply with the terms of the Financing Agreement and disburse funds to Defendants' authorized contractors only after the home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements, were false and deceptive;

b.      Whether Defendants breached material terms in the Financing Agreement by disbursing funds Defendants' authorized contractors before home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements.

c.      Whether Defendants' authorized contractors forged Plaintiffs' and Class Members' e-signatures on Certificates of Completion;

d.      Whether Defendants knew or should have known that Defendants' authorized contractors forged Plaintiffs' and Class Members' e-signatures on Certificates of Completion;

e.      Whether reasonable consumers would have refused to contract with Defendants if they had known that Defendants would engage in the

28

fraudulent, unfair, and deceptive practice of disbursing funds to Defendants' authorized contractors before home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements;

      f.     Whether reasonable consumers would have refused to contract with Defendants if they had known that Defendants would engage in the fraudulent, unfair, and deceptive practice of accepting e-signatures forged by Defendants' authorized contractors in order to disburse funds;

      g.     Whether Defendants' practice of misrepresenting that Defendants would comply with the terms of the Financing Agreement to disburse funds to Defendants' authorized contractors only after the home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements, was to deceive Plaintiffs and the Class resulting in additional profits for Defendants;

      h.     Whether Defendants had a duty to disclose that their practice of representing to consumers that Defendants would disburse funds to their authorized contractors only after the home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements was false and deceptive;

      i.     Whether Defendants had a duty to disclose that their practice of

accepting forged e-signatures for Plaintiffs and Class Members was false and deceptive;

j.      Whether Defendants omitted, actively concealed, and/or failed to disclose material facts about Defendants breaching the terms of the Financing Agreement and disbursing funds to their authorized contractors before the home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements;

k.      Whether Defendants omitted, actively concealed, and/or failed to disclose material facts about Defendants accepting forged e-signatures for Plaintiffs and Class Members;

l.      Whether this concealment of material facts would have induced reasonable consumers to act to their detriment by willingly contracting with Defendants for the financing of their home improvements;

m.      Whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, restitution and injunctive relief; and

n.      Whether Plaintiffs and the other Class Members are entitled to damages and other monetary relief and, if so, in what amount.

102.   **Typicality.**  Plaintiffs' claims are typical of a Nationwide Class and a State Class Member's claims.  As described herein, Defendants breached material

terms in the Financing Agreement by disbursing funds to Defendants' authorized contractors before home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements.

103.   Plaintiffs and Class Members have been damaged by Defendants' misconduct.  Plaintiffs and Class Members have incurred similar or identical losses related to Defendants' wrongful conduct as set forth above.   Furthermore, the factual basis of Defendants' misconduct is common to all Class Members and represents a common thread of misconduct resulting in injury to all Class Members.

104.   **Adequacy.**  Plaintiffs will fully and adequately represent and protect the interests of the Nationwide or State Class because they share common interests with Class Members as a result of Defendants' misconduct.

105.   Plaintiffs have retained counsel with experience in complex, commercial, multiparty, mass tort, consumer, and class action litigation.  Plaintiffs' counsel have prosecuted complex actions, including those involving consumer fraud and unfair and deceptive business acts and practices, in state and federal courts across the country.

106.   Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

**<u>Fed. R. Civ. P. 23(b) Prerequisites</u>**

107.    Defendants have acted or refused to act on grounds generally applicable to all the members of the Class, thereby making final injunctive relief or declaratory relief concerning the Class as a whole appropriate.

108.    **Predominance.**  Questions of law and fact common to the Nationwide Class and State Class, including those listed above, predominate over questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Individual damages on the matter can be readily calculated.  Thus, the question of individual damages will not predominate over legal and factual questions common to the Nationwide Class and State Class.

109.    **Superiority.**  Defendants' wrongful conduct was directed at consumers uniformly as a Class.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs and Class Members have all suffered and will continue to suffer financial harm and damage as a result of Defendants' wrongful conduct, which was directed toward Class Members as a whole, rather than specifically or uniquely against any individual Class Members. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for

Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without effective remedy.

**Declaratory and Injunctive Relief.**  Class wide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the Class.  Class wide relief and Court supervision under Rule 23 assures fair, consistent, and equitable treatment and protection of all Class Members, and uniformity and consistency in Defendants' discharge of their duties to perform corrective action regarding Defendants breaching material terms in the Financing Agreement by disbursing funds to Defendants' authorized contractors before home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements.

## CAUSES OF ACTION

### COUNT I
**(Breach of Contract on behalf of the Nationwide Class or State Class)**

110.   Plaintiffs incorporate by reference all material facts in this Complaint as fully set forth herein.

111.   Plaintiffs bring this Count on behalf of themselves and the Nationwide Class or State Class.

112.   As alleged above, Plaintiffs and the Class contracted with Defendants to finance home improvements through the PACE program by entering into the

Agreement to Pay Assessments and Finance Qualifying Improvements ("the Financing Agreement") with Defendants.

113.   The Financing Agreement is a valid contract between Plaintiffs and the Class and Defendants.

114.   As set forth in the Financing Agreement, "[t]he district will make one disbursement as directed by the Property Owner when the following conditions have been met", including "(1) all required affidavits from all contractors and the Property Owner certifying that the Final Improvements have been completed in accordance with all applicable building codes, regulations, and other governmental requirements, and (ii) final releases or waivers of all applicable contractors', mechanic's and materialmen's liens":[22]

> b)   Disbursement of Funds. The District will make one disbursement as directed by the Property Owner when the following conditions have been met, except in the case of an approved phase or course of construction payment schedule authorized by the District. The District's obligation to disburse funds to pay the costs of the Final Improvements shall be conditioned upon the Property Owner providing, to the satisfaction of the District, (i) all required affidavits from all contractors and the Property Owner certifying that the Final Improvements have been completed in accordance with all applicable building codes, regulations, and other governmental requirements, and (ii) final releases or waivers of all applicable contractors', mechanic's and materialmen's liens. Disbursed funds must be used to pay for the installation of improvements or used purely as a reimbursement of expenses incurred for the installation of improvements. Acceptance of financing while refusing to pay for installation of improvements may constitute fraud against the Program.

115.   Again, the Financing Agreement requires that the home improvements "**have been completed in accordance with all applicable building codes, regulations, and other governmental requirements**."[23]

116.   In systemic, continuous and repetitive conduct, Defendants materially breached the terms of the Financing Agreement by disbursing funds to Defendants'

---

[22] *Financing Agreement,* p. 3.
[23] *Id.* (emphasis added)

authorized contractors before home improvements were completed in accordance with all applicable building codes, regulations, and other governmental requirements.

117.   Plaintiffs and Class Members were damaged because Plaintiffs and Class Members 1) were deprived the full use of their home improvements while paying for these home improvements as tax assessments on their property tax bills; 2) had to pay third-party contractors to complete the work that was never finished by Defendants' authorized contractors; and/or 3) had to pay fees for code violations and other costs arising from Defendants' breaches of contract.

118.   Plaintiffs and the Class demand judgment against Defendants and request compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT II
### (Unjust Enrichment on behalf of the Nationwide Class or State Class)

119.   Plaintiffs incorporate by reference all material facts in this Complaint as fully set forth herein.

120.   Plaintiffs bring this Count on behalf of themselves and the Nationwide Class or State Class.

121.   Plaintiffs and Class Members conferred a benefit on Defendants by contracting with Defendants for the financing of home improvements through the PACE program.

35

122.   Defendants voluntarily accepted and retained the benefit conferred by Plaintiffs and Class Members in the form of profits.

123.   The benefits that Defendants received and retained are unjust, and inequity has resulted.

124.   Defendants knowingly accepted the unjust benefits of their misconduct.

125.   It is inequitable and unconscionable for Defendants to retain those unjust benefits without paying value to Plaintiffs and Class Members.

126.   As a result of Defendants' misconduct, the amount of their unjust enrichment should be disgorged and returned to Plaintiffs and Class Members, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action pursuant to one or more of the the proposed Classes, as they may be modified or amended, and respectfully request that this Court:

A.   Determine that the claims alleged herein may be maintained as a class action under Fed. R. Civ. P. 23, and issue an order certifying the Class as defined above;

B.   Appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C.      Award damages, including compensatory damages, to Plaintiffs and all

other Class Members;

D.      Award Plaintiffs and Class Members actual damages sustained;

E.      Award Plaintiffs and Class Members such additional damages, over and

above the amount of their actual damages, which are authorized and warranted

by law;

F.      Grant restitution to Plaintiffs and Class Members and require

Defendants to disgorge inequitable gains;

G.      Award Plaintiffs and Class Members their reasonable attorneys fees

and reimbursement of all costs for the prosecution of this action; and

H.      Award such other relief as this Court deems just and appropriate.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury on

all issues so triable.

Dated:  October 12, 2023

By:   */s/ Andrew J. Vargas, Esq.*
**Andrew J. Vargas, Esq.**
Fla. Bar. No.: 59582
121 Alhambra Plaza, Suite 1140
Coral Gables, FL 33134
Tel: 305.631.2528
Facsimile: 305.631.2741
E-mail: Andrew@vargasgonzalez.com
Service e-mail:
Service6@VargasGonzalez.com

Jacob Alex Flint, Esq.
(Mo. Bar No. 70640), *to be admitted*
*Pro Hac Vice*
jacob@jacobflintlaw.com
JACOB FLINT LAW
2 CityPlace Dr. #200
St. Louis, MO 63141
phone:  314-677-7613

*Counsel for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I, the undersigned hereby, certify that on October 12, 2023 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service.

By:    */s/ Andrew J. Vargas, Esq.*
**Andrew J. Vargas, Esq.**
Fla. Bar. No.: 59582
121 Alhambra Plaza, Suite 1140
Coral Gables, FL 33134
Tel: 305.631.2528
Facsimile: 305.631.2741
E-mail: Andrew@vargasgonzalez.com
Service e-mail:
Service6@VargasGonzalez.com